LOUIS L. ZIMMER, Appellant, v. WILLIAM H. CHEW and JOHN M. EADIE, Defendants; GEORGE HAGEMEYER and Others, Respondents.

*Note — indorsement in blank — evidence as to ownership — its surrender to the holder by his pledgee — intent of a firm indorsement, how shown — effect of a testator's leaving part of his estate in the business of the firm — amendment where an action is improperly brought against executors as such — appeal where a motion to withdraw a juror is denied.*

The indorsement of a note in blank by the payee and its production by the plaintiff in an action thereon are *prima facie* evidence of the latter's ownership of it, and the existence of subsequent indorsements does not affect this presumption, especially where they are canceled.

The fact that, three days before the note was made, the payee gave to the plaintiff in the action a power of attorney to collect and receive all moneys payable to him, and that the plaintiff received the note for the payee and acknowledged payment of a part of it, does not necessarily rebut the legal presumption of ownership in the plaintiff or establish that he was a mere collecting agent.

The surrender of the note by a pledgee and creditor of the plaintiff implies either that the debt has been paid or that, though not paid, the pledgee intended to relinquish his lien upon the note, and justifies the parties liable upon the note in paying it to the plaintiff.

A written agreement by a corporation to indorse a series of notes to facilitate their discount by certain firms, is competent evidence that a note of such series, subsequently executed, was indorsed by said corporation with the intention of giving the makers, one of the firms specified in the agreement, credit with the payee.

A firm which, on the seventh of August, agreed to become liable as a joint maker on a note given for the purchase of land in which it was to have an interest, will not be presumed, on the ninth of the same month, to have indorsed such note with the intent that it should involve no liability whatever on its part to the seller of the land; and the fact that it was agreed that a certain company should become a second indorser, and that the firm should indemnify it against all loss by reason of its indorsement, the company thus becoming a surety with a right of recourse against the firm, is cogent evidence that the firm was also liable on its indorsement directly to the payee of the note.

In an action upon such a note, one of the makers may testify as to what was said to him by a member of the firm indorsing the note in regard to the giving of the note; and may also testify as to what the member of the firm said in reference to the responsibility of the indorsers, and may state the nature of the transaction under which the note was given to the plaintiff, and the plaintiff may also properly be asked whether he accepted the note on the faith of the indorsements.

A testator, by leaving a portion of his estate in the business of a firm in which he was a member, with directions that his two sons, his previous partners, should continue to conduct the business on behalf of themselves and of his estate, does not put his general estate at the risk of the business so conducted after his decease, and his executors, in their representative capacities, do not become partners or liable for the conduct of the business of the firm.

Where an action is brought against such executors in their representative capacities the court has no power at the trial to convert the action into one against them individually.

The Appellate Division will rarely reverse the action of the trial court in denying a motion to withdraw a juror. It will not do so where counsel was aware of the relief necessary two months before the trial, and failed to make the proper motion at Special Term.

APPEAL by the plaintiff, Louis L. Zimmer, from a judgment of the Supreme Court in favor of the defendants George Hagemeyer

and others, entered in the office of the clerk of the county of New York on the 22d day of March, 1898, upon the dismissal of his complaint as to such defendants by direction of the court after a trial at the New York Trial Term.

The action is upon a promissory note for $9,400, dated August 9, 1894, payable in six months, made by Chew and Eadie to the order of Hugh Dalzell, Jr. The indorsements are as follows:

"GEO. HAGEMEYER & SONS,
"FOREIGN HARDWOOD LOG. CO.
      "By G. B. HANFORD, *Treas.*
      "By NATHANIEL HAVEN, *Vice-Pres't.*
"Rec'd. of Geo. Hagemeyer & Sons, Aug. 9th / 94, the sum of eleven hundred ($1,100) dollars on this note — Hugh Dalzell, Jr., per L. L. Zimmer, Atty.
      "HUGH DALZELL, JR.
      "LOUIS ZIMMER (Cancelled).
      "JOHN W. HAAREN (Cancelled)."

The defendants are the makers, Chew and Eadie, and the indorsers, the Foreign Hardwood Log Company and George Hagemeyer & Sons. The latter firm is sued by making as parties defendant George and Caspar Hagemeyer individually, and also George and Caspar Hagemeyer, Mary Hagemeyer and William Killian, as executrix and executors of the estate of George Hagemeyer, Sr., deceased. It is alleged in the complaint that "the defendants George Hagemeyer and Caspar Hagemeyer, together with the estate of George Hagemeyer, deceased, were partners doing business under the firm name of George Hagemeyer & Sons." In support of this allegation the will of George Hagemeyer was introduced, the 4th clause of which contained the following provisions:

"All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath unto my executors hereinafter appointed and the survivor of them, in trust, nevertheless, for the following uses and purposes, that is to say: That they shall allow the share of the capital stock of the firm of George Hagemeyer & Sons, which shall belong to me at the time of my decease, to remain in the business until my youngest daughter Eva shall attain the age of twenty-one years, upon the following terms and conditions: My

two sons, George and Caspar, shall continue to conduct the business on behalf of themselves and of my estate. * * * My executors (exclusive of my said two sons) shall not be compelled to devote any more time to the said business than shall be necessary to enable them to understand at all times its condition and the methods of its management, which they shall have the same right to do as if they were copartners in such business. * * *. The same (the testator's share of the capital stock) may also be at any time withdrawn by my executors (other than my said two sons), in case the business shall not be conducted in a manner satisfactory to such other executors."

It is also alleged in the complaint that the note was indorsed by the firm of George Hagemeyer & Sons and also by the Foreign Hardwood Log Company, in substance, for the purpose of giving credit to the makers and inducing the payee, Dalzell, to accept it.

At the close of the plaintiff's case a motion to dismiss was made on behalf of all the defendants except Chew and Eadie on the grounds that the plaintiff had failed to prove that he was the owner of the note; that the defendants, the Foreign Hardwood Log Company and George Hagemeyer & Sons, were not indorsers in regular order, and that there was no proof that the note was indorsed by them for the purpose of inducing its acceptance by the payee, Hugh Dalzell, Jr., or that the latter received it in reliance upon their indorsements; and, as to the executors of the estate of George Hagemeyer, that there was no evidence that they were copartners in the firm of George Hagemeyer & Sons. The motion was granted as to all the defendants in whose behalf it was made.

*George W. Wingate,* for the appellant.

*W. C. Beecher,* for the respondents George and Caspar Hagemeyer, and the estate of George Hagemeyer.

*Charles Howard Williams,* for the respondent, the Foreign Hardwood Log Company.

BARRETT, J.:

The three grounds of the motion to dismiss raise the legal questions to be considered:

1. The indorsement of the note in blank by the payee Dalzell and the production of it by the plaintiff constituted *prima facie* evidence of the latter's ownership. (4 Am. & Eng. Ency. of Law [2d ed.], 318, and cases cited.) The mere fact of subsequent indorsements does not affect this result. Presumably the prior holder, the plaintiff, took up the note. That view is strengthened here by the cancellation of the later indorsements.

To rebut this presumption of ownership, the defendants rely mainly upon the plaintiff's cross-examination. From this it appears that, three days before the note was made, Dalzell gave the plaintiff a power of attorney to collect and receive all moneys payable to him, and that the plaintiff received the note for Dalzell, and acknowledged payment of a part of it. But this does not necessarily rebut the legal presumption of ownership. It is entirely compatible with such ownership. The case is quite different from those cited (*Iselin* v. *Rowlands*, 30 Hun, 488; *Bell* v. *Tilden*, 16 id. 346), where there was explicit and uncontradicted evidence that the plaintiff was a mere collection agent.

It also appeared by the plaintiff's testimony that the note was delivered by Haaren, the last indorser, to the Irving National Bank for collection, and remained there for some months after the commencement of the action, and that it was delivered to Haaren as security for a debt due him by the plaintiff, or by the plaintiff and the latter's father. Haaren gave it to the plaintiff's counsel some months before the trial.

This surrender of the note by Haaren, the pledgee and creditor, to the plaintiff, the pledgor and debtor, is susceptible of two inferences; one, that the debt had been paid, and the other that, though he debt had not been paid, Haaren intended to relinquish his lien thereon. It was for the defendants to rebut these inferences, since the legal presumption is in favor of the plaintiff's title. Haaren's act, unexplained, points to the conclusion that the legal title to the note was in the plaintiff throughout. Certainly, in any view of Haaren's acts, the parties liable upon the note would have been justified and perfectly safe in paying the plaintiff. His legal title *prima facie*, has not been successfully shaken, and clearly the case on that head should, at the very least, have been submitted to the jury.

2. The ruling of the learned trial judge, that there was no evidence that the defendants indorsed the note with the intention of giving the makers credit with the payee, is somewhat extraordinary in view of the explicit testimony of the treasurer of the Foreign Hardwood Log Company that the note was indorsed by the company " to assist in the purchase " of certain lands in North Carolina, and that this note was given to the payee Dalzell, one of the owners, as part of the purchase price and as a substitute for cash, and in view of the evidence furnished by the note itself that George Hagemeyer & Sons made a payment thereon to Dalzell on the day it was issued. But, however the case stood on the facts actually proved, evidence was offered and erroneously excluded, which would have abundantly established the liability of all the indorsers. The plaintiff sought to introduce in evidence a contract executed two days before the date of the note in suit by the log company, and the firms of Chew & Eadie and George Hagemeyer & Sons. This contract recited that the two firms had a contract for the purchase of a certain tract of land in North Carolina, known as the "Whittier Tract;" that it was necessary to procure the discount of a series of notes in order to raise the money to pay for the same, and that " the endorsement of said Log Company upon said notes * * * is desired by said firms to enable them to more readily procure the same to be discounted as aforesaid." Thereupon the company agrees to indorse each of the notes. It was provided that the proceeds should be used solely as a fund with which to purchase the land, and the company was given a commission upon all sales of timber upon the tract. There were also careful provisions for its indemnification against loss by reason of the indorsements. It would be difficult to imagine more pertinent or cogent evidence upon the question at issue. Here we have the written acknowledgment of one of the parties that it indorsed the notes to facilitate their discount, which is tantamount to saying that it indorsed them to give the makers credit with the payee, for it could have facilitated the discount only by a loan of its credit. As to George Hagemeyer & Sons we find a discrepancy between the contract and what was done in this particular case. The contract provides that this firm shall be the payee and first indorser, while the note in suit was made out to the order of Dalzell, and the firm's indorsement is simi-

lar to that of the company. But the contract was still strong evidence that the firm was directly liable to Dalzell and subsequent holders. It provided that the notes " shall constitute and be the joint and several liabilities of said firms, and of the said copartners constituting said firms." A firm which, on the seventh of August agreed to become liable as a joint maker on a note given for the purchase of land in which it was to have an interest can hardly have intended, on the ninth of the same month, to make an indorsement which involved no liability whatever to the seller of the land. Again, it is provided that the company shall become a " second indorser " and that the firm shall indemnify it against all loss by reason of its indorsements. The fact that ultimately, as between the parties, the liability of the company was but that of a surety, with a right to recourse against one of the principal debtors, Hagemeyer & Sons, is cogent evidence that the latter were also liable on their indorsement directly to the payee. It would be strange, indeed, if the indorsement of the principal carried no liability while the precisely similar indorsement of the surety did. In that case the latter would have to stand the brunt of proceedings on the note and recoup himself in another action, as unnatural an arrangement as can well be conceived.

Other competent evidence was excluded. The defendant Chew was asked what was said by Mr. Hagemeyer to him upon a particular occasion with regard to the giving of the notes. This was objected to, and plaintiff's counsel, in answer to the objection, stated that he proposed " to prove that the statements made by Mr. Hagemeyer to the witness on this occasion were communicated by him to Mr. Zimmer, and that it was on the faith of those statements that the notes were taken with the indorsement of the Hardwood Log Company and Hagemeyer & Sons, taken by Mr. Zimmer as representing Mr. Dalzell and by Mr. Dalzell afterwards personally." The objection was thereupon sustained. It is hard to see on what theory this ruling was made. The attitude of the firm with regard to the notes prior to their delivery was certainly material, and the admissions of one of the members of the firm, who was conducting the transaction, were competent evidence of it, especially when communicated to the payee and his agent. The witness was then asked questions tending to show that Mr. Hagemeyer spoke of the responsibility of

the indorsers and wished the plaintiff to be informed on the subject; but the evidence was excluded. It was plainly competent. He was also asked, "Now, state what the transaction was under which that note was given to Mr. Zimmer; what was done by other people," and "for what purpose or for what reason was that note given to Mr. Zimmer?" These questions were also excluded and errone-ously. They would have disclosed the situation of the parties at the time the note was given and thrown light upon the intention of the indorsers. The plaintiff was also asked directly whether he accepted the note on the faith of the indorsements, and other questions were put to him tending to show that he did rely upon their credit. The evidence was all excluded. Though the attitude of the payee alone cannot control (*Montgomery* v. *Schenck*, 82 Hun, 24), the evidence was competent in connection with all the other facts. In truth, almost every legitimate effort of the plaintiff to prove this branch of his case was thwarted. It was error to dismiss the complaint upon the evidence actually introduced and still plainer error to exclude the evidence offered.

3. As to the executors of the estate of George Hagemeyer we think the judgment should be affirmed. By leaving a portion of the estate in the business under the testator's will, the executors, if part-ners at all, merely became such individually to the extent of the fund invested. (*Columbus Watch Co.* v. *Hodenpyl*, 135 N. Y. 430.) The general estate of the deceased partner did not thereby succeed to his place in the firm, or to the liabilities attached thereto. The testator nowhere attempted to put the general assets of his estate at the risk of the business which was to be conducted after his decease. The business was to be so conducted, not by his executors, but by his two sons individually, and the only power conferred upon the execu-tors was to permit the use of the testator's capital (already invested in the business) by his two sons individually as surviving partners. It follows that no cause of action was made out against the execu-tors in their representative capacity, and the judgment must, there-fore, be affirmed as to them.

An amendment was, however, asked for at the trial converting the action against the executors into one against them individually. We think it clear that no such relief could there have properly been granted. What was sought was, in substance, to bring new parties

into the case. George and Caspar Hagemeyer were already parties individually, but Mary Hagemeyer and William Killian were not. They had the right in their personal capacity to answer and defend in the ordinary way. A motion to withdraw a juror was also made and denied. The cases must be rare indeed in which this court will review the discretion of the trial court with reference to such a motion. This is certainly not one of them. The relief became necessary only because of a legal misapprehension, and it appears that the plaintiff's counsel was aware of his error more than two months before the trial. He failed to take the proper steps to remedy his mistake, erroneously acting upon the theory that the court upon the trial could turn an action against defendants in a representative capacity into an action against them individually.

As to the legal representatives of George Hagemeyer, the judgment should be affirmed, with costs. As to the other defendants, respondents, the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., RUMSEY, PATTERSON and O'BRIEN, JJ., concurred.

As to the legal representatives of George Hagemeyer, judgment affirmed, with costs. As to the other defendants, respondents, judgment reversed and new trial granted, with costs to appellant to abide event.